# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 CR 1079 | **DATE** | 2/17/2004 |
| **CASE TITLE** | USA vs. Michael Neuendank | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, and those described in open court at the time of sentencing, the Court grants Neuendank's motion for downward departure. The Court has departed downward to a sentence of twelve months and one day, for the reasons explained at sentencing.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | FEB 2 3 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 23 |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | | |
| OR | courtroom deputy's initials | '04 FEB 17 PM 2:00 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



FEB 2 3 2004

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL NEUENDANK, )<br>)<br>Defendant. ) | Case No. 02 CR 1079 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Defendant Michael Neuendank, who pled guilty to mail fraud, moved for a downward departure from the Sentencing Guideline range of twenty-one to twenty-seven months based on the government's allegedly unreasonable and unwarranted delay in prosecuting him, along with his efforts in the intervening period to make restitution, rehabilitate himself, and accept responsibility for his offenses. The Court granted the motion and explained its ruling in open court. The purpose of this order is to supplement the Court's verbal explanation.

The offense to which Neuendank pled guilty, a serious crime that caused his employer Progressive Manufacturing Corp. a loss of over $450,000, took place between 1996 and February 1998. PMC discovered the crime on the latter date, fired Neuendank, and reported his offense to the authorities. Neuendank attempted suicide shortly after he was fired. In April 1998, he effectively admitted his guilt in an interview conducted by agents of the FBI. The government had all it realistically needed to institute prosecution by no later than mid-1998, around the same

33

time that PMC sued Neuendank civilly.[1]

As the Court has explained more fully in its August 14, 2003 ruling denying Neuendank's motion to dismiss based on preindictment delay, the government essentially put the case on the back burner – or worse – after it had all the material evidence it relied on to prosecute Neuendank. This happened not for any investigative reason, but rather due to simple inertia and inattention. The case gathered dust for an extended period until it was revived by a combination of factors – the original case agent retired, the statute of limitations began to loom large, and the newly assigned agent kicked things into gear. In the intervening period, Neuendank settled PMC's civil suit, making significant restitution payments and agreeing to a payment plan that required him to put up a far greater proportion of his income than PMC could have collected through legal proceedings; he became rehabilitated and reformed his life in ways more fully described in the defendant's sentencing submission and in several letters submitted to the Court; and he terminated the unusual relationships that had contributed in at least some degree to his commission of the offense.

The Court agrees with Neuendank that these factors – the unwarranted delay standing alone, and in combination with his rehabilitative and restitutionary efforts in the intervening period – are a proper basis for a downward departure from the prescribed Guideline sentencing range. A judge may impose a sentence outside the prescribed Guideline range if there exists an aggravating or mitigating circumstance of a kind or to a degree not adequately taken into account by the Sentencing Commission in formulating the Guidelines that should result in a sentence

---

[1] Neuendank settled the civil case in December 1998, agreeing to make restitution to PMC.

different from that prescribed. U.S.S.G. § 5K2.0; *United States v. Koon,* 518 U.S. 81 (1996).

"The Guidelines . . . 'place essentially no limit on the number of potential factors that may warrant a departure.'" *Koon,* 518 U.S. at 106 (quoting *Burns v. United States,* 501 U.S. 129, 136-137 (1991)). The Court's ruling that the government's delay did not violate Neuendank's due process rights is of no consequence; in *Koon* itself, the Supreme Court upheld a departure based on the fact that the defendants had been subjected to successive federal and state prosecutions, even though the successive prosecution did not violate the defendants' constitutional rights. *Id.* at 112. The Court upheld the trial court's finding that the successive prosecution, though not violative of the defendants' rights, had "'significantly burden[ed] the defendants'" and was thus appropriately considered as a basis for a sentencing departure. *Id.* (quoting *United States v. Koon,* 833 F. Supp. 769, 790 (C.D. Cal. 1993)).

Under *Koon* the question is whether the government's unreasonable and unwarranted delay, a factor unmentioned in the Guidelines and not taken into account by the Sentencing Commission, is "sufficient to take the case out of the Guideline's heartland" after considering the structure and theory of the particular Guideline at issue and the Guidelines as a whole. *Koon,* 518 U.S. at 95. It cannot seriously be questioned that this factor puts Neuendank's case outside the heartland of federal prosecutions generally, and fraud prosecutions in particular. The overwhelming majority of federal crimes, including fraud offenses, are prosecuted reasonably promptly once the necessary investigation is conducted after the offense comes to the attention of law enforcement authorities. Prosecutions like this one that languish for no real reason are rare indeed.

Numerous courts have ruled that unwarranted delay in initiating prosecution is a factor

upon which a court may appropriately rely as a basis for a downward departure. *See, e.g., United States v. O'Hagan,* 139 F.3d 641, 656-58 (8th Cir. 1998); *United States v. Sanchez-Rodriguez,* 161 F.3d 556, 564 (9th Cir. 1998) (en banc); *United States v. Saldana,* 109 F.3d 100, 104 (1st Cir. 1997); *United States v. Garcia,* 165 F. Supp. 2d 496, 498 (S.D.N.Y. 2001); *United States v. Jasin,* 25 F. Supp. 2d 551, 562 (D. Kan. 1998) (recognizing that delay may provide basis for departure but declining to depart in particular case); *United States v. Hollins,* 863 F. Supp. 563, 568-69 (N.D. Ohio 1994). Most of these cases involve situations in which the sentence imposed on the defendant ends up being harsher due to the delay, for example because the opportunity for a concurrent sentence has been lost, or when the defendant's opportunity to move for a departure has been lost or impaired. But the rationale of these cases is not limited to those specific situations. In any event, the delay in this case, though not sufficiently prejudicial to warrant a finding of a due process violation, has adversely affected to some degree Neuendank's ability to seek and obtain a downward departure based on diminished capacity under Guideline § 5K2.13. And as explained more fully below, a sentence within the Guideline range would effectively deprive both society and Neuendank of the benefits of his rehabilitative efforts over the six years that have passed since his offense was discovered. Thus even if some concrete detriment to the defendant is needed before delay in initiating prosecution can be considered as a basis for departure, it exists here.

In Neuendank's case, the government's unreasonable delay is a factor that warrants a sentence below the range prescribed by the Guidelines. As the Court explained at the time of sentencing, the delay effectively removed any deterrent effect prosecution might have on Neuendank or others, allowed to pass any need that might have existed to protect the public or

individuals, and eliminated any need for further rehabilitation – all of which are among the important goals of sentencing as declared by Congress. *See* 18 U.S.C. § 3553(a)(2).

The government's delay also impaired the goal of retribution, that is, the idea that punishment should reflect the seriousness of the offense and promote respect for the law. *See id.* Imposition of punishment within the Guideline-prescribed range after Neuendank had made significant restitutionary efforts and agreed to make full restitution, rehabilitated himself, and shown that he did not pose a significant risk of future criminal activity, would effectively turn our justice system into an indiscriminate avenging angel, mowing down offenders irrespective of whether doing so will contribute to Congress' declared sentencing goals. As the Seventh Circuit has aptly put it,

> By delaying the indictment and prosecution of crimes, prosecutors can create the impression that criminal acts do not have consequences and thereby seriously undermine the deterrent purpose of criminal law. Ideally, criminal law should be administered in hot blood. The crime, once uncovered, should be swiftly dealt with by arrest, indictment and trial. While some complicated cases may require long-term investigation, most do not. Swift justice is required for the benefit of the public, the victims and, in a different sense, the accused himself. And prosecutors should remind themselves of this on a frequent basis.

*United States v. Hunter*, 197 F.3d 862, 866 (7th Cir. 1999); *see also, United States v. Ashford*, 924 F.2d 1416, 1426 (7th Cir. 1991) (Bauer, J., concurring) ("[C]riminal justice, if it is to be effective at all as a detriment, must be administered in hot blood; that is, as close to the criminal act as possible. All speedy trial acts and statutes of limitation aside, criminal prosecutions have a salutary effect on the individual defendants and the community at large when the process is sure and swift. The long delay between crime and punishment betokens an attitude that the agencies established to protect society from crime are both disinterested and leisurely about their

business.").

Neuendank's restitutionary and rehabilitative efforts in the period between his offense and the time the prosecution was initiated would not suffice by themselves as a basis for a downward departure; though laudable, these efforts by themselves were not extraordinary in the sense that is required to warrant a downward departure for that reason standing alone. But these efforts are a factor that the Court may consider in combination with the government's delay in determining the appropriateness and extent of a sentencing departure. Because of the government's unwarranted delay in initiating prosecution, both Neuendank and society will be deprived of a significant portion of the benefit of what Neuendank has done to atone for his offenses. He will find it difficult if not impossible to keep the job that now permits him to make restitution, and his efforts to rehabilitate himself, which have borne so much fruit in the years that have passed since his offense, will to some extent have to begin anew after his release from prison.

## Conclusion

For these reasons, and those described in open court at the time of sentencing, the Court grants Neuendank's motion for downward departure. The Court has departed downward to a sentence of twelve months and one day, for the reasons explained at sentencing.

---
MATTHEW F. KENNELLY
United States District Judge

Date: February 18, 2004